**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| SIMARJEET KAUR | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. SAG-21-00292 |
| | * | |
| POLICE OFFICER POLLACK #5597, *et al.,* | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Simarjeet Kaur, a former Sears, Roebuck & Co. ("Sears") retail employee, was detained by store management and arrested by police on suspicion of shoplifting. A prosecutor later entered a *nolle prosequi* on the charges against her.  Plaintiff has now sued various parties in connection with her arrest, including Sears and a store security manager, Jeffrey Markowski (collectively, the "Sears Defendants"); the two police officers who arrested her, Officers Stephanie Pollack and Cameron Birkmaier (collectively, the "Police Officer Defendants"); and the Baltimore County Police Department ("BCPD"). Plaintiff asserts numerous state and federal claims, primarily stemming from her contention that Defendants lacked the requisite legal justification to detain her without a warrant. In a prior Order, this Court granted in part and denied in part Sears' motion to dismiss several claims. ECF 24. Discovery has now concluded, and the Sears and Police Officer Defendants have moved for summary judgment on all remaining counts against them. ECF 47, 48. Plaintiff filed oppositions and cross-moved for partial summary judgment against both sets of Defendants. ECF 63, 64. In addition, BCPD has filed an unopposed motion to bifurcate trial of Plaintiff's claims against it and to stay discovery. ECF 49. This Court has reviewed the parties'

motions, oppositions, replies, and the exhibits attached to them. ECF 65, 68, 70, 71, 74. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons below, the Sears and Police Officer Defendants' motions will be granted, and Plaintiff's cross motions will be denied. BCPD's motion to bifurcate and stay discovery will be denied as moot.

## I.    FACTUAL BACKGROUND

Plaintiff was hired as a retail employee at a Sears department store in White Marsh, Maryland, in August, 2018. ECF 63-13 at 22:9-24:22. Shortly after she was hired, store management began to suspect that Plaintiff and another retail employee, Amna Iman, were engaged in a shoplifting scheme called "free bagging," whereby an employee at a cash register places unscanned (and thus unpaid for) merchandise into a shopping bag alongside other, scanned items, making it appear as though all the items have been paid for. ECF 7 ¶¶ 96-97; ECF 63-3 at 33:14-36:10, 57:21-58:15. Defendant Markowski, a loss prevention officer at Sears, conducted an investigation into the alleged shoplifting scheme. ECF 63-3 at 57:21-62:2.

On December 15, 2018, at the end of Plaintiff's shift, a manager called Plaintiff into an office in the back of the store. ECF 63-13 at 71:20-72:18. Two Sears employees were waiting there for her. *Id*.[1] Plaintiff testified at her deposition that after she arrived, the door to the office was locked and the two employees began questioning her about the alleged theft scheme. *Id*. at 73:4-76:7. During this questioning, the Sears employees refused to allow Plaintiff to leave the office or make phone calls and told her that if she did not confess and write an apology letter she would go

---

[1] Plaintiff's Amended Complaint alleged that it was Markowski who locked her in the office, questioned her, and attempted to coerce her into writing a confession. ECF 7 at ¶¶ 52-82. However, Plaintiff acknowledged in her deposition testimony that she had no direct interaction with Markowski during her detainment. ECF 63-13 at 264:22-265:9.

to jail. *Id*. Plaintiff eventually wrote a brief apology letter, though she continued to deny to the two Sears employees that she had done anything wrong. *Id*. at 80:17-80:21.

While Plaintiff was being questioned, Markowski called BCPD to report a suspected felony theft scheme. ECF 63-3 at 44:22-45:7. Birkmaier and Pollack responded to the scene. *Id*. at 45:14. Prior to calling BCPD, Markowski separately contacted Birkmaier—who was assigned to patrol the White Marsh mall—to give him notice that a felony theft would be reported. *Id*. at 52:4-52:9; ECF 63-1 at 43:15-43:17. Markowski was familiar with Birkmaier, who had worked at Sears prior to becoming a police officer. ECF 63-3 at 18:1-18:8. Pollack also knew Markowski from responding to previous incidents at Sears. *Id*. at 18:7-18:8; ECF 63-2 at 27:7-27:11.

Upon arriving at the store, Birkmaier and Pollack met Markowski, who led them to a back office where Plaintiff and Iman were being questioned. *See* ECF 63-11 at 0:10 ("Birkmaier Video"); ECF 63-12 at 0:05 ("Pollack Video"). The officers then placed Plaintiff and Iman under arrest. Birkmaier Video at 0:50-1:30. Plaintiff became increasingly distraught, insisting she was innocent and yelling at Iman. *Id*. at 1:45-2:40, 3:20-3:40, 4:50-6:00. In her Amended Complaint, Plaintiff alleged that Birkmaier then pushed her, causing her to fall to the floor, hit her head, and suffer a seizure. ECF 7 ¶¶ 90-92. However, bodycam videos of the arrest from Birkmaier and Pollack, which were provided during discovery, fail to show any such push. Rather, they show Plaintiff collapse to the ground on her own and begin convulsing. Birkmaier Video at 6:15; Pollack Video at 5:55. An ambulance was called, and emergency medical technicians (EMTs) rendered care. *See generally* ECF 48-12. However, Plaintiff declined to be transported to the hospital, telling EMTs she was "fine now." *Id*. at 4.

After Plaintiff was taken to the White Marsh precinct, Birkmaier drafted and signed a statement of probable cause. *See* ECF 47-9. The document included a detailed inventory of 48

items allegedly stolen by Plaintiff and Iman over five dates in 2018. *Id.* at 4-7. The inventory reflected a total of $1,684.19 in suspected stolen merchandise. *Id.*; *see also* Md. Code. Ann., Crim. Law § 7-104(g)(1)(i) (stating that the theft of property or services with a value of at least 1,500 constitutes a felony). Birkmaier testified at his deposition that the list of allegedly stolen items and their value was provided by Markowski following the arrest. ECF 63-1 at 86:2-86:18. Markowski also testified that he provided the inventory to Birkmaier. ECF 63-3 at 124:5. Plaintiff was charged with one count of theft scheme and five counts of theft. ECF 7 ¶ 114. However, a prosecutor later entered a *nolle prosequi* on all counts. *Id.* ¶ 120.

Plaintiff subsequently brought the instant suit, asserting 20 claims against all Defendants: battery (Count I); false arrest and imprisonment (Counts II and III); intentional infliction of emotional distress (Count IV); negligence and gross negligence (Counts V and XVI); malicious prosecution (Count VI); invasion of privacy (Counts VII, VIII, and IX); civil conspiracy (Count X); aiding and abetting (Count XI); violations of state and federal debt, wage, and labor laws (Counts XII-XV); violations of Articles 24 and 26 of the Maryland Declaration of Rights (Counts XVII and XVIII); and violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution (Counts XIX and XX). ECF 7 ¶¶ 148-286.

Notably, the Amended Complaint largely rested on a theory that Plaintiff was not involved in any shoplifting scheme, but rather had been falsely accused and detained by Defendants without evidence. The Amended Complaint stated that Defendants possessed "no evidence" that Plaintiff had shoplifted, ECF 7 ¶ 94, and it further asserted that "no video evidence existed showing that Plaintiff Kaur committed any theft or participated in any theft scheme," ECF 7 ¶ 118(b). Instead, Plaintiff's Amended Complaint claimed that Markowski, Birkmaier, and Pollack had conspired,

among other things, to withhold from the prosecutor that no evidence existed tying Plaintiff to the alleged shoplifting scheme. *Id*. ¶¶ 118-19.

During discovery, however, the Sears Defendants produced three surveillance videos which contradicted these aspects of the Amended Complaint. In particular, the videos show Plaintiff standing in front of a cash register, while Iman or another Sears employee checks out various merchandise. *See* ECF 47-6 at 23:51:20-00:01:00; ECF 47-7 at 04:08:36-04:12:11; ECF 47-8 at 02:12:00-02:21:20. In each video, Plaintiff places both scanned and unscanned items into shopping bags. *Id*. She then "pays" for the merchandise and transports the shopping bags (including the unscanned items) offscreen. *Id*. Plaintiff stated in deposition testimony that she was "shocked" by the videos, ECF 63-13 at 95:6, and she acknowledged that they showed her participating in a scheme to steal Sears merchandise. *Id*. at 173:10-173:13. However, Plaintiff insisted that she was unaware that her colleagues were purposefully not scanning certain items. *Id*. at 172:10. Rather, Plaintiff insisted that she had been "used" and "trap[ped] … in this case" by her coworkers, who had asked Plaintiff to purchase the bags of scanned and unscanned items on their behalf. *Id*. at 172:22. Furthermore, and as discussed at greater length below, Plaintiff now maintains that the Sears and Police Officer Defendants are nonetheless civilly liable because they lacked probable cause that she participated in a *felony*-level theft scheme, and therefore Defendants did not have legal justification to detain and arrest her without a warrant.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823

F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Casey*, 823 F. Supp. 2d at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Summary judgment shall also be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Additionally, the bifurcation of trials is addressed in Federal Rule of Civil Procedure 42(b), which provides:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

The decision whether to bifurcate claims for trial is committed to the broad discretion of the trial judge. *See Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993). Likewise, with respect to the requested stay, decisions about the appropriate timing and sequence of discovery lie within the discretion of the trial court. *See* Fed. R. Civ. P. 26(d)(1) (allowing discovery rules, including those pertaining to scheduling, to be modified "by court order").

## III.   ANALYSIS

This Court will begin by addressing the parties' motions and cross motions for summary judgment, before turning to BCPD's motion to bifurcate and stay discovery.

### A.  Summary Judgment

Plaintiff's Amended Complaint originally consisted of 20 counts against each Defendant. Several of these counts were dismissed with respect to the Sears Defendants at prior stages of this litigation. *See* ECF 24, 29. Furthermore, during summary judgment briefing, Plaintiff agreed to dismiss its claims against the Police Officer Defendants for violation of state and federal debt collection laws (Counts XII and XII), and its claims against all defendants for violations of the Maryland Wage Payment and Collection Act (Count XIV) and the Fair Labor Standards Act (Count XV). ECF 63 at 22, ECF 64-1 at 20. Still, that leaves 16 counts which remain contested as to at least one defendant. This Court will analyze each count in turn.

#### 1.  Battery (Count I)

Plaintiff and the Police Officer Defendants both seek summary judgment on Plaintiff's battery claim. In Maryland, "[a] battery occurs when one intends a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll*, 735 A.2d. 1096, 1099 (Md. 1999). In cases involving police officers, however, a necessary element of battery is "no legal authority or justification for the arresting officer's actions." *Hines v. French*, 852 A.2d 1047, 1055 (Md. Ct. Spec. App. 2004) (quotation omitted). Relevant here, a police officer in Maryland has legal justification to conduct a warrantless arrest if the officer "has probable cause to believe that a felony has been committed or attempted and the person has committed or attempted to commit the felony whether or not in the presence or within the view of the police officer." Md. Code Ann., Crim. Proc. § 2-202(c). Probable cause is "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty." *Palmer Ford, Inc. v. Wood*, 471 A.2d 297, 302 (Md. 1984) (quotation omitted). Where the facts regarding probable cause are undisputed, then the question of probable cause is one of law for the court. *Silvera v. Home Depot U.S.A., Inc.*, 189 F. Supp. 2d 304, 310 (D. Md. 2002) (citing *Gladding Chevrolet, Inc. v. Fowler*, 287 A.2d 280, 284 (Md. 1972)). Even when legal justification exists, a police officer may be liable for battery if they use excessive force in conducting an arrest. *French v. Hines*, 957 A.2d 1000, 1037 (Md. Ct. Spec. App. 2008); *see also Richardson v. McGriff*, 762 A.2d 48, 56 (Md. 2000) (stating that an excessive force analysis is applicable to "the common law claim[] of battery").

With respect to legal justification, the record evidence establishes that the Police Officer Defendants had probable cause to believe Plaintiff had participated in a felony theft scheme, which in Maryland requires a scheme to steal more than $1,500 of merchandise. Md. Code Ann., Crim. Law § 7-104(g)(1)(i). Specifically, Birkmaier and Pollack both testified that Markowski had

informed them prior to the arrest that he had conducted an investigation showing that Plaintiff and Iman participated in a scheme to steal a felony amount of Sears merchandise. ECF 63-1 at 43:15; ECF 63-3 at 36:18. Birkmaier and Markowski both testified that Markowski later provided Birkmaier with detailed information from his investigation, which Birkmaier used to prepare his statement of probable cause containing a detailed inventory of the items allegedly stolen. ECF 63-1 at 86:2-86:18; ECF 63-3 at 124:5. While Plaintiff asserts that the Police Officer Defendants failed to review the surveillance footage or conduct their own independent investigation to confirm the felony amount prior to the arrest, they were under no obligation to do so in this instance. *See Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991) (stating that a police officer need not "exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established"). Both officers were familiar with Markowski, *see* ECF 63-2 at 27:7, ECF 63-3 at 18:1, and there was no reason to believe that his representations in this instance about a felony theft scheme were inaccurate or untrustworthy. Under the circumstances, the officers were entitled to rely on Markowski's investigation as providing "reasonable grounds of suspicion" that a felony had occurred. *Palmer Ford*, 471 A.2d at 302. The officers' arrest of Plaintiff was therefore legally justified.

Furthermore, the record evidence shows that the officers did not use excessive force in conducting the arrest. In assessing whether an officer used excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). While Plaintiff's Amended Complaint alleges that Birkmaier pushed her into a wall, ECF 7 ¶¶ 90-92, this assertion is clearly contradicted by the police bodycam videos. Birkmaier's video shows him speaking to Iman when he turns to find that Plaintiff—who until that point had been at times hysterical and uncooperative—had

collapsed on the floor and started convulsing. Birkmaier Video at 6:15. Thus, contrary to the Amended Complaint, Birkmaier was not near Plaintiff at the moment she fell and could not have pushed her. While Pollack was next to Plaintiff during the relevant time period, her bodycam video shows Plaintiff crying and pleading with officers before she suddenly collapses. Pollack Video at 5:55-6:05. There is no indication that Plaintiff was pushed or physically accosted prior to falling to the ground. Furthermore, the officers immediately radioed for medical assistance following Plaintiff's collapse, removed her handcuffs, and monitored her until emergency personnel arrived. *See* Birkmaier Video at 6:15-18:00; Pollack Video at 6:05-17:50. At no point did the officers use any force, much less any force that could be considered excessive.

In sum, the officers' actions during their legally justified arrest of Plaintiff were objectively reasonable, and they are entitled to judgment as a matter of law on Plaintiff's battery claim.

## 2. False Arrest and Imprisonment (Counts II and III)

The Police Officer and Sears Defendants both seek summary judgment on Plaintiff's false arrest and false imprisonment claims. Plaintiff opposes their motions and also seeks summary judgment in her favor on these counts.

The elements of false arrest and false imprisonment are identical under Maryland law. *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000). "Those elements are: 1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification." *Id*. The parties do not appear to contest the fact that Plaintiff was deprived of her liberty without her consent when she was detained and eventually arrested following her shift at Sears. They do contest, however, whether that deprivation of liberty was legally justified. Like battery, the test of legal justification in the context of false arrest and false imprisonment is determined "by the principles applicable to

the law of arrest." *Montgomery Ward v. Wilson*, 664 A.2d 916, 926 (Md. 1995) (quoting *Ashton v. Brown*, 660 A.2d 447, 472 (Md. 1995)).

As explained above, the Police Officer Defendants were legally justified in arresting Plaintiff because they had probable cause to believe that she had participated in a felony theft scheme. Accordingly, the Police Officer Defendants are also entitled to summary judgment on Counts II and III.

However, the same legal justification analysis does not apply to the Sears Defendants. In Maryland, "[d]ifferent considerations apply where the defendant in the false imprisonment action is not a police officer, but is a private party who instigated the allegedly wrongful arrest." *Wilson*, 664 A.2d at 926. The Court of Appeals of Maryland has clarified that, for the purposes of a false imprisonment action, a warrantless arrest by a private person is legally justified in two scenarios: "when [1] there is a felony being committed in his presence or when a felony has in fact been committed whether or not in his presence, and the arrester has reasonable ground (probable cause) to believe the person he arrests has committed it; or [2] a misdemeanor is being committed in the presence or view of the arrester which amounts to a breach of the peace." *Great Atl. & Pac. Tea Co. v. Paul*, 261 A.2d 731, 738-39 (Md. 1970); *see also Ashton*, 660 A.2d at 472; *McNair v. FedEx Ground Package System*, Civil No. PJM 04-2341, 2007 WL 9782499 at *1 (D. Md. Jan. 10, 2007).

The parties dispute whether the Sears Defendants can satisfy the test for private arrest set forth in *Paul*. However, this Court need not decide this issue, because the Sears Defendants have also asserted Maryland's statutory merchant's privilege. *See* ECF 70 at 5-6. That privilege states:

> A merchant or an agent or employee of the merchant who detains or causes the arrest of any person shall not be held civilly liable for detention, slander, malicious prosecution, false imprisonment, or false arrest of the person detained or arrested, whether the detention or arrest takes place by the merchant or by his agent or employee, if in detaining or in causing the arrest of the person, the merchant or the agent or employee of the merchant had, at the time of the detention or arrest,

11

probable cause to believe that the person committed the crime of "theft," as prohibited by § 7-104 of the Criminal Law Article, of property of the merchant from the premises of the merchant.

Md. Code Ann., Cts. & Jud. Proc § 5-402(a). This statute provides "a retail merchant with probable cause . . . a complete defense to false imprisonment." *Silvera*, 189 F. Supp. 2d at 310; *see also Wilson*, 664 A.2d at 931 (explaining that the statutory privilege "was simply designed, for reasons of fairness and public policy, to insulate a particular category of defendants from specified tort liability when they had probable cause to believe that the plaintiff had committed theft."). Notably, Maryland's merchant's privilege allows the agent of a merchant to detain a person upon probable cause that they have committed theft, regardless of the value of goods suspected to have been stolen. *See* Md. Code Ann., Crim. Law § 7-104(a).

The record evidence clearly establishes that the Sears Defendants had probable cause to believe that Plaintiff had committed theft of Sears' property from the store. Markowski testified that he observed Plaintiff and other Sears employees on both recorded and live surveillance video engaging in free bagging. ECF 64-3 at 58:5-60:15. The Sears Defendants produced some of these surveillance videos during discovery, which show Plaintiff bagging items that her co-workers had not scanned. *See* ECF 47-6 at 23:51:20-00:01:00; ECF 47-7 at 04:08:36-04:12:11; ECF 47-8 at 02:12:00-02:21:20. Plaintiff admitted during her deposition testimony that the videos showed her engaging in free bagging—through she maintains she was tricked by her co-workers into participating in the scheme. ECF 64-13 at 172:11-174:4. Instead, Plaintiff's theory of liability is that the Sears Defendants lacked probable cause that Plaintiff was involved in a *felony* theft scheme, because they did not have sufficient evidence that she had helped steal more than $1,500 in merchandise. But Maryland's merchant's privilege only requires probable cause of theft,

regardless of the value of goods involved.[2] Because the undisputed record evidence clearly establishes that Markowski had probable cause to believe Plaintiff had engaged in theft, the Sears Defendants may successfully avail themselves of the merchant's privilege in this instance. They are therefore entitled to summary judgment on Counts II and III.

### 3.   Intentional Infliction of Emotional Distress (Count IV)

The Police and Sears Defendants have moved for summary judgment with respect to Plaintiff's claim for intentional infliction of emotional distress ("IIED"). Plaintiff opposes the motions and has counter-moved for summary judgment on this claim with respect to the Sears Defendants.

In Maryland, an IIED claim requires four elements: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).  Intentional or reckless conduct occurs when the actor "desires to inflict severe emotional distress, and . . . knows that such distress is certain, or substantially certain, to result from his conduct; or where the defendant acts recklessly

---

[2] In response to the Sears Defendants' merchant's privilege defense, Plaintiff argues that the statutory privilege only applies if the individual detained has the merchant's property on their person at the time of the arrest. But this argument finds no basis in the privilege's text, which imposes no such possession requirement. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-402(a). Furthermore, Plaintiff's citations to pattern jury instructions and case law are unpersuasive. In particular, Plaintiff attempts to rely on *Caldor, Inc. v. Bowden*, 625 A.2d 959 (Md. 1993), which upheld a false imprisonment verdict in favor of a juvenile employee who was detained by a shopkeeper and his agents, subjected to racially motivated comments, and forced to confess to theft. On appeal, the shopkeeper and his agents argued that a juvenile court had previously determined that they had probable cause to detain the employee, and that this determination was entitled to preclusive effect. *Id*. at 970-72. The Court of Appeals of Maryland rejected this argument, merely concluding that the juvenile court's rulings in the previous case were not final determinations on probable cause, and therefore that issue was properly submitted to the jury. *Id*. at 972. The Court of Appeals did not impose any sort of possession requirement on the statutory merchant's privilege.

in deliberate disregard of a high degree of probability that the emotional distress will follow." *Id*. at 614. Furthermore, the extreme and outrageous element requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. The IIED tort "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 11 (Md. 1992).

This Court agrees with Defendants that the record evidence is devoid of facts that would allow a reasonable jury to conclude that any of the Defendants' conduct meets the "rigorous" standard for IIED claims. *Weathersby*, 607 A.2d at 11. Plaintiff seems to argue that the Defendants acted recklessly by detaining Plaintiff, interviewing her, and eventually causing her to be arrested without conducting a more complete investigation, despite knowing that such actions would likely cause emotional distress. *See* ECF 63-1 at 20-21; ECF 64-1 at 14-15. Even assuming *arguendo* that this conduct could be considered reckless with respect to the Sears Defendants, it did not go "beyond all possible bounds of decency" so as to satisfy the extreme and outrageous prong. *Harris*, 380 A.2d at 614. As discussed above, Markowski had video and other evidence of Plaintiff's involvement in a theft scheme involving a significant quantity of merchandise. Under such circumstances, the decision to question Plaintiff and involve police can hardly be considered extreme and outrageous. Furthermore, no reasonable juror could conclude that the Police Defendants acted recklessly, extremely, or outrageously by making a legally justified arrest based on Markowski's representations. Accordingly, the Police Officer and Sears Defendants are entitled to summary judgment on Count IV.

### 4. Gross Negligence and Negligence (Counts V and XVI)

Plaintiff's state law claims for gross negligence and negligence have already been dismissed as to Sears, ECF 24, but remain against the Police Officer Defendants and Markowski. Under Maryland law, a plaintiff seeking to establish negligence must prove (1) a duty owed to the plaintiff, (2) a breach of that duty, (3) a causal relationship between the breach and the harm, and (4) damages suffered. *See Jacques v. First Nat'l Bank*, 515 A.2d 756, 758 (Md. 1986). Gross negligence "sets the evidentiary hurdle at a higher elevation" and requires "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Beall v. Holloway-Johnson*, 130 A.3d 406, 415 (Md. 2016) (quotation omitted). "[A] wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.*; *see also Stracke v. Estate of Butler*, 214 A.3d 561, 569 (Md. 2019) ("[A] claim of gross negligence must be supported by sufficient evidence that the defendant acted with wanton or reckless disregard for the safety of others." (quotations omitted)).

### i.   *Police Officer Defendants*

The Police Officer Defendants first assert that they are immune from Plaintiff's ordinary negligence claim. Under Maryland law, "police officers are public officials and therefore enjoy the common law immunity possessed by such officials." *Smith v. Danielczyk*, 928 A.2d 795, 813 (Md. 2007). This limited immunity "protects the officer from liability for non-malicious negligent conduct committed in the performance of discretionary acts in furtherance of the officer's official duties." *Id.*; *see also DiPino v. Davis*, 729 A.2d 354, 370 (Md. 1999); *Muthukumarana v. Montgomery County*, 805 A.2d 372, 390-392 (Md. 2002). In its opposition, Plaintiff fails to address this immunity defense and instead simply asserts that the officers breached a duty of reasonable care by arresting Plaintiff without independently investigating the accusations against

15

her. For the reasons discussed above, Plaintiff's argument is meritless and, in any event, cannot overcome the common law immunity afforded to the Police Officer Defendants. The officers are therefore entitled to summary judgment on Plaintiff's negligence claim.

With respect to gross negligence, this Court has already explained that the record evidence clearly establishes that the Police Officer Defendants had probable cause to arrest Plaintiff and did not use excessive force in arresting her. Plaintiff has introduced no evidence that the officers "inflict[ed] injury intentionally," or were "so utterly indifferent to the rights" of the Plaintiff during the course of the arrest, as is required to state a claim for gross negligence. *Beall*, 130 A.3d at 415. As a result, no reasonable jury could conclude that the Police Officer Defendants were grossly negligent, and the officers are entitled to summary judgment on this claim as well.

*ii.    Markowski*

With respect to her negligence claim, Plaintiff argues that Markowski breached a duty of ordinary and reasonable care "when he took actions to initiate criminal proceedings against [Plaintiff] without first performing an adequate investigation into the allegations of criminal activity." ECF 64-1 at 15. However, the Sears Defendants have introduced ample evidence that Markowski did undertake a thorough investigation into Plaintiff's involvement in the alleged theft scheme. Most notably, the Sears Defendants have produced three videos which show Plaintiff free bagging items that her co-workers had scanned. *See* ECF 47-6, 47-7, 47-8. Markowski testified that he observed these videos—along with other live and recorded surveillance footage of Plaintiff engaging in free bagging—and that he compiled a detailed log of the items that appeared stolen, based on his review of the videos and store purchasing records. ECF 47-5 at 60:5-62:2. Additionally, the Sears Defendants produced a statement of probable cause drafted by Birkmaier, which included a detailed inventory of the items suspected to have been stolen and their values

totaling $1,684.19. ECF 47-9. Both Markowski and Birkmaier testified that this inventory was based on information that Markowski provided from his investigatory file. ECF 63-1 at 86:2-86:18; ECF 63-3 at 124:5.

In response, Plaintiff has failed to establish a genuine issue of fact by pointing to non-speculative evidence that would allow a reasonable jury to determine that Markowski acted negligently. Notably, Plaintiff has abandoned the theory set forth in her Amended Complaint, which alleged that Markowski lacked any evidence (video or otherwise) of Plaintiff's involvement in a theft scheme. Rather, Plaintiff now essentially argues that Markowski failed to act with reasonable care in investigating the theft scheme. *See* ECF 64 at 15-16. In support of this contention, she notes that the Sears Defendants have failed to produce the investigatory file compiled by Markowski—who no longer works at Sears—which supposedly contained a detailed accounting of the items allegedly stolen. ECF 68 at 3-5. But the absence of that file does not support the inference that Markowski's investigation was haphazard or (as Plaintiff implies) fabricated. *Id*. at 4. As noted above, Defendants have produced the statement of probable cause, which contained a detailed list of items stolen. ECF 47-9. Both Markowski and Officer Birkmaier testified this list was based on information provided by Markowski, and it is unclear where else such information could have come from. Beyond that absence of the investigatory file, Plaintiff relies on minor discrepancies between the dates of alleged thefts listed on the statement of probable cause and the surveillance videos produced in this case to argue that Markowski lacked evidence that Plaintiff stole more than $1,500 of merchandise—the amount required to justify a warrantless arrest in this case. *See* ECF 64 at 1-5. But it remains undisputed that Plaintiff—knowingly or not—participated in a free bagging scheme across multiple dates that was captured on video surveillance. Based on those surveillance videos and his investigatory findings, Markowski called

police to report the theft scheme. *Id.* at 22:16-22:21, 44:4-44:12. This Court concludes that no reasonable jury could find that such conduct was unreasonable or violated a duty of care to Plaintiff.

Accordingly, Markowski is entitled to summary judgment with respect to Plaintiff's negligence claim. Because Markowski is not liable for ordinary negligence, Plaintiff's gross negligence claim must also fail. This Court will therefore grant summary judgment to Markowski with respect to Counts V and XVI.

### 5.  Malicious Prosecution (Count VI)

All parties seek summary judgment on Plaintiff's malicious prosecution claim. Under Maryland law, to establish malicious prosecution, the plaintiff must prove (1) "that a criminal proceeding was instituted or continued by the defendant against the plaintiff," (2) "that the proceeding terminated in favor of the plaintiff," (3) "the absence of probable cause for the proceeding," and (4) "malice, meaning that a primary purpose in instituting the proceeding was other than that of bringing the plaintiff to justice." *DiPino*, 729 A.2d. at 373; *Jannenga v. Libernini*, 222 Md. 469, 472 (1960). A private party can initiate a prosecution for the purposes of a malicious prosecution claim if it takes some affirmative act to "institute[], instigate[] or inspire[] in any fashion" the state to bring criminal charges. *Smithfield Packing Co., Inc. v. Evely*, 905 A.2d 845, 854 (Md. Ct. Spec. App. 2006) (quotation omitted). It is undisputed that a criminal proceeding was initiated against Plaintiff that terminated in her favor when the prosecutor entered a *nolle prosequi*. Thus, only the third and fourth elements are at issue.

For the reasons explained above, this Court has already determined as a matter of law that the Police Officer Defendants had probable cause to believe that Plaintiff had committed felony theft. Therefore, the officers are entitled to summary judgment on Count VI.

With respect to the Sears Defendants, Plaintiff argues that the record evidence fails to show that Markowski had probable cause to believe that Plaintiff had stolen more than $1,500 of merchandise, as was required to constitute felony theft. Plaintiff further points to Maryland caselaw stating that the fourth element of a malicious prosecution claim, malice, "may be inferred from the lack of probable cause." *DiPino*, 729 A.2d at 374. But even assuming *arguendo* that a genuine dispute exists that Markowski lacked probable cause that Plaintiff had committed *felony* theft, he undoubtedly had probable cause based on the surveillance videos that Plaintiff had stolen some merchandise from the store. Thus, Plaintiff cannot as a matter of law satisfy the third element requiring a lack of probable cause. *See Nasim v. Tandy Corp.*, 726 F. Supp. 1021, 1027 (D. Md. 1989) ("[Store] employees had probable cause . . . to believe that some crime had been committed . . . . That is all that is needed to negate the showing of lack of probable cause.") Furthermore, the presence of some probable cause means that the fourth element of malice cannot be inferred in this instance. *See DePino*, 729 A.2d at 374. And Plaintiff has not otherwise pointed to any evidence that Markowski "'was actuated by an improper motive,' a purpose 'other than that of bringing [the plaintiff] to justice.'" *Id.* (quoting *Wilson*, 664 A.2d at 925). Accordingly, the Sears Defendants are likewise entitled to summary judgment on Plaintiff's malicious prosecution claim.[3]

### 6.  Invasion of Privacy (Counts VII, VIII, and IX)

The Police Officer Defendants next seek summary judgment on Plaintiff's three invasion of privacy claims for intrusion upon seclusion (Count VII), unreasonable publicity (Count VIII),

---

[3] This Court also notes that Maryland's statutory merchant's privilege would also appear insulate the Sears Defendants from Plaintiff's malicious prosecution claim. *See* Md. Code Ann., Cts. & Jud. Proc § 5-402(a) (stating that a merchant or its agent "shall not be held civilly liable for detention, slander, *malicious prosecution*, false imprisonment, or false arrest" when the detaining party had probable cause of a theft of store merchandise (emphasis added)). However, the Sears Defendants have not asserted the privilege with respect to this claim.

and false light (Count IX). Specifically, the officers argue that, as with the ordinary negligence claim discussed above, Maryland's public official immunity shields them from these three claims.

As explained above, Maryland public officials have immunity from claims based on *negligent* tortious conduct in furtherance of their official duties. *Smith*, 928 A.2d at 813. However, Maryland courts have made clear that this immunity "is quite limited and is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct." *Lee v. Cline*, 863 A.2d 297, 305 (2004); *see also DePino*, 729 A.2d at 370. Thus, the Court of Appeals of Maryland has previously held that a police officer was not entitled to immunity against a general claim for invasion of privacy. *Ashton*, 660 A.2d at 470-71 (holding the lower courts erred by granting summary judgment on immunity grounds, but concluding that the plaintiff had nonetheless failed to offer evidence showing an invasion of privacy). The Police Officer Defendants have failed to explain why Plaintiff's invasion of privacy claims in the instant case should be treated differently. In particular, Count VII alleges intrusion upon seclusion, which is defined as "[t]he *intentional* intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard*, 130 Md. App. 67, 73 (2000) (emphasis added) (quotation omitted). This tort cannot be satisfied by mere negligence. Moreover, even assuming *arguendo* that unreasonable publicity and false light can be committed via negligent conduct,[4] the officers have failed to explain how Maryland's limited public official immunity applies to those claims under the facts of this case. As a result, this Court concludes that the officers are not entitled to immunity from Plaintiff's invasion of privacy claims.

---

[4] Unlike intrusion upon seclusion, the torts of unreasonable publicity and false light do not have an intent requirement, and merely require public disclosure by the accused of private or false information. *See Hollander v. Lubow*, 351 A.2d 421, 426-427 (Md. 1976), *superseded on other grounds by* Md. Rule 2-501(a), (e); *Wimbush v. Kaiser Found. Health Plan of the Mid Atlantic States, Inc.*, TDC-14-0525, 2015 WL 2090654, at *10 (D. Md. May 5, 2015).

While the officers are not immune from these claims, a district court may enter summary judgment *sua sponte* on alternative grounds "so long as the losing party was on notice that she had to come forward with all of her evidence." *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 661 (4th Cir. 2017) (quoting *Celotex Corp.*, 477 U.S. at 326). The defending party must also be afforded an opportunity to "defend against summary judgment on those specific grounds." *Alvarez v. Getachew*, No. 1:17-CV-0141-PX, 2021 WL 1561517, at *2 (D. Md. Apr. 21, 2021) (quoting *Adams Hous., LLC v. Cty. of Salisbury*, 672 F. App'x 220, 222 (4th Cir. 2016)). After briefing was completed in this case, this Court requested, and Plaintiff provided, a supplemental memorandum identifying the facts and evidence she seeks to rely upon to establish her invasion of privacy claims. *See* ECF 72, 74. For the reasons stated below, this Court concludes that Plaintiff has not introduced competent evidence in support of these claims, and it will therefore grant summary judgment to the Police Officer Defendants.

> ### i.   *Intrusion Upon Seclusion (Count VII) and Unreasonable Publicity (Count VIII)*

Intrusion upon seclusion and unreasonable publicity are two related invasion of privacy torts. Maryland law defines intrusion upon seclusion as "[t]he intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard*, 744 A.2d 583, 585 (Md. Ct. Spec. App. 2000) (quotation omitted). Unreasonable publicity, meanwhile, involves the highly objectionable publication of a matter in one's private life, even if it is true. *Hollander, v. Lubow*, 351 A.3d 421, 426 (Md. 1976), *superseded on other grounds by* Md. Rule 2-501(a),(e). These two torts "require the invasion of something secret, secluded or private pertaining to the plaintiff." *Id.* at 427. Thus, with respect to intrusion upon seclusion, there is no liability for observing a person in a public place "since [she] is not then in seclusion." *Furman*, 744 A.2d at 585; *see also Marrs v. Marriott*

*Corp.*, 830 F. Supp. 274, 283-84 (D. Md. 1992) ("[T]his type of invasion of privacy . . . generally is inapplicable to most areas of the workplace because there can be no liability for observing an employee at work since [s]he is then not in seclusion." (quotation omitted)). Similarly, for unreasonable publicity to lie, "the matter disclosed must be a private fact." *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1118 (Md. Ct. Spec. App. 1986).

In this case, all the interactions between the Police Officer Defendants and Plaintiff took place in public or in the workplace, where Plaintiff did not have an expectation of privacy. Thus, there was no "seclusion" for the officers to intrude upon. *See Marrs*, 830 F. Supp. at 283-84. While Plaintiff argues that the officers "intrud[ed] into [her] personal space" by arresting her, ECF 74 at 4, this conduct is more appropriately addressed through her claims for battery or false arrest, which this Court has already addressed. Furthermore, for the reasons discussed above, the Police Officer Defendants had legal justification to arrest Plaintiff, and therefore cannot be held liable under an invasion of privacy theory for effectuating that valid arrest.

Plaintiff's unreasonable publicity claim fails for similar reasons. While Plaintiff argues that the felony charges set forth in the public police incident report were false, *see* ECF 74 at 2-4, 48-6 (incident report), the alleged falsity of that document is not grounds for an unreasonable publicity claim. Rather, this tort is concerned with whether the defendant unreasonably publicized *private* facts. *See Hollander*, 351 A.2d at 426. Here, the information in the incident report was based entirely on alleged conduct that occurred in public. Thus, nothing in the report constituted a "private fact." Indeed, Plaintiff appears to base this claim not on the privacy of the alleged charges described in the incident report, but rather their truth or falsity. While this theory may support a claim for false light invasion of privacy, it cannot support a claim for unreasonable publicity.

Accordingly, this Court will grant summary judgment to the Police Officer Defendants with respect to Counts VII and VIII.

*ii.    False Light (Counts IX)*

"[T]o establish a successful claim for false light invasion of privacy, a plaintiff must prove that the defendant 1) gave 'publicity to a matter concerning another that places the other before the public in a false light,' 2) that "the false light in which the other person was placed would be highly offensive to a reasonable person,' and 3) that 'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Hill v. Hunt*, 2022 WL 704001, at *6 (D. Md. March 9, 2022) (quoting *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 318 (Md. Ct. Spec. App. 1995)). Essentially, Plaintiff argues that the Police Officer Defendants are liable for arresting Plaintiff, filing a public incident report, and charging her, even though they "were aware that the arrest was improper, and that Ms. Kaur was falsely accused of felony theft." ECF 74 at 2. But this Court has already concluded as a matter of law that the Police Officer Defendants had probable cause to arrest Plaintiff for felony theft, based on Markowski's representations that his investigation had revealed a felony theft scheme. There was no reason for the officers to believe that Markowski was untrustworthy, or that the inventory of allegedly stolen goods that he provided—and that Officer Birkmaier relied on to fill out the incident report—was somehow unreliable. Accordingly, even if Plaintiff could establish that the accusations of felony theft were ultimately false, she cannot show that the officers acted recklessly or with knowledge of that falsity in this case. *See Hunt*, 2022 WL 704001, at *6 (dismissing invasion of privacy claims, including false light, against a police officer where the officer had probable cause to seek a warrant for the plaintiff's arrest). Accordingly, this Court will grant summary judgment to the Police Officer Defendants on Count IX, as well.

### 7.   Civil Conspiracy (Count X)

The Sears Defendants, Police Officer Defendants, and Plaintiff all seek summary judgment on Plaintiff's claim for civil conspiracy. In Maryland, a civil conspiracy requires "[1] a confederation of two or more persons, [2] some unlawful act done in furtherance of the conspiracy, and [3] actual legal damage resulting to the victim-plaintiff." *Van Royen v. Lacey*, 277 A.2d 13, 14 (Md. 1971).  The Court of Appeals of Maryland "has consistently held that 'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1045 (Md. 1995) (quotation omitted). This Court has already concluded, for the reasons described above, that the Sears and Police Officer Defendants are entitled to summary judgment on Plaintiff's underlying tort claims. Absent any independent tortious conduct, Defendants cannot be held liable for civil conspiracy. The Sears and Police Officer Defendants are therefore entitled to summary judgment on Count X.

### 8.   Aiding and Abetting (Count XI)

This Court previously dismissed Plaintiff's aiding and abetting claim against the Sears Defendants. *See* ECF 24, 29. The Police Officer Defendants have now moved, and Plaintiff has counter-moved, for summary judgment on Plaintiff's aiding and abetting claim against the officers. Under Maryland law, a person who "encouraged, incited, aided or abetted the act of the direct perpetrator of the tort" may be held liable for the underlying tortious conduct. *Alleco Inc.*, 665 A.2d at 1049 (quoting *Duke v. Feldman*, 226 A.2d 345, 347 (Md. 1967)). To be held liable for aiding and abetting, there must be a "direct perpetrator of the tort." *Id*. (quoting *Duke*, 226 A.2d at 347). "Thus, civil aider and abettor liability, somewhat like civil conspiracy, requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable." *Id*.;

24

*see also Wright v. Audisio*, Civ. No. CCB-21-809, 2022 WL 4608332, at *3 (D. Md. Sept. 30, 2022). Once again, this Court has concluded that the Sears Defendants are entitled to summary judgment on all of Plaintiff's underlying tort claims. Without an independent tort committed by a principal, the Police Officer Defendants cannot by held liable for aiding and abetting. Accordingly, the Police Officer Defendants are entitled to summary judgment on Count XI.

### 9.   State and Federal Constitutional Claims (Counts XVII-XX)

Finally, the Police Officer Defendants and Plaintiff both seek summary judgment on Plaintiff's state and federal constitutional claims. Specifically, Plaintiff seeks damages under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitutions, and she also asserts violations of Articles 24 and 26 of the Maryland Declaration of Rights. ECF 7 ¶ 237-286. Article 24 is Maryland's constitutional guarantee of due process and equal protection under the law, and it is generally construed *in pari materia* with the Fourteenth Amendment. *Tyler v. City of College Park*, 3 A.3d 421, 434-35 (Md. 2010); *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496 (D. Md. 2013). Likewise, Article 26 is the State's analog to the Fourth Amendment and protects the same rights as its federal counterpart. *Richardson*, 762 A.2d at 56; *Dent v. Montgomery Cnty. Police Dep't*, 745 F. Supp. 2d 648, 661 (D. Md. 2010).  In addition, public officials (including police officers) are entitled to qualified immunity for federal constitutional violations when "in light of clearly established law, [they] could reasonably believe that their actions were lawful." *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012) (quotation omitted).

In this case, Plaintiff's theory of relief for her constitutional claims mirrors her state common law claims for battery, false arrest and imprisonment, and malicious prosecution. ECF 63 at 7-12. That is, Plaintiff contends that the Police Officer Defendants violated her constitutional

rights when they arrested her without probable cause. *See, e.g.*, *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2022) ("To establish an unreasonable seizure under the Fourth Amendment, [plaintiff] needs to show that the officers decided to arrest [them] . . . without probable cause."); *Horner*, 690 F.3d at 188 (stating that a malicious prosecution claim under § 1983 "is simply a claim founded on a Fourth Amendment seizure that incorporates the elements of the analogous common law tort" (quoting *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009)). As discussed above, the record evidence, even when viewed in the light most favorable to Plaintiff, establishes that the Police Officer Defendants had probable cause to arrest Plaintiff based on Markowski's representations regarding his investigation. The officers conducted that arrest legally and without the use of excessive force. Furthermore, Plaintiff has introduced no evidence showing that the officers violated her Fifth Amendment rights by depriving her of life, liberty, or property without due process, or by jeopardizing her privilege against self-incrimination. Thus, there was no state or federal constitutional violation in this case, and the officers are entitled to summary judgment on Counts XVII, XVIII, XIX, and XX. Because the Court concludes that no constitutional violation occurred in this case, it need not consider the officers' argument that they are entitled to qualified immunity for the federal constitutional claims.

### B.  Motion to Bifurcate and Stay Discovery

BCPD has filed a motion to (1) bifurcate the trial of Plaintiff's claims against BCDP from its claims against the Police Officer Defendants, and to (2) stay discovery against BCPD pending the resolution of Plaintiff's claims against the individual officers. However, this Court has concluded, for the reasons explained above, that the Police Officer Defendants are entitled to summary judgment on all of Plaintiff's claims against them. Therefore, as a practical matter, the

motion to bifurcate and stay discovery is moot, because there are no remaining claims against the Police Officer Defendants.

Because the individual defendants are entitled to summary judgment on all underlying claims, it is unclear what, if any, basis remains for holding BCPD civilly liable. *See, e.g., Grayson v. Reed*, 195 F.3d 692, 697 (4th Cir. 1999) (absent "underlying constitutional violations by any individual, there can be no municipal liability" under 42 U.S.C. § 1983); *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 460 (D. Md. 2020). However, because, BCPD has not moved for summary judgment or dismissal of the claims against it, this Court will defer further consideration of the matter pending receipt of a dispositive motion from BCPD. Any such motion must be filed on or before January 9, 2023.

## IV.   CONCLUSION

For the foregoing reasons, the Sears Defendants' motion for summary judgment, ECF 47, and the Police Officer Defendants' motion for summary judgment, ECF 48, will be GRANTED. Plaintiff's cross-motions for summary judgment, ECF 63, 64, will be DENIED. BCPD's motion to bifurcate trial and stay discovery, ECF 49, will be DENIED as moot. A separate order follows.

Dated: December 9, 2022

_____/s/_____
Stephanie A. Gallagher
United States District Judge